## William G. Warden *v.* Philadelphia, Appellant.

## Mary A. Bradbury *v.* Philadelphia, Appellant.

*Municipalities—Eminent domain—Damages.*

In proceedings to assess damages for property taken by a municipality for a reservoir, the measure of damages is the fair market value of the property at the time it was taken by the city.

In such case the omission of the court to comment on an alleged extraordinary estimate of a witness is not ground for error where the record shows that the trial judge was not requested to comment, favorably or otherwise, on the testimony of any of the witnesses.

Plaintiff's witnesses, upon direct examination, expressed opinions of the value of the land, if it were cut up into lots, and streets opened through it. These witnesses were called and examined without objection, and elaborately cross-examined. After the trial had progressed for two days, and all of plaintiff's testimony in chief consisting of one hundred and fifty printed pages had been received, and he had rested, defendant moved " that the court order that the testimony produced by the plaintiff as to what might have been the value of this property cut up into lots, opening streets, giving frontages, making it entirely different on a plan which did

not exist there and does not exist, except in the scheme of the witnesses and the claimants, be stricken from the record." *Held*, that the motion was properly overruled.

Argued Jan. 22, 1895. Appeals, Nos. 151 and 152, by defendant, from judgments of C. P. No. 4, Phila. Co., March T., 1894, Nos., 737 and 738, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeals from report of jury of view, appointed to determine the damages caused to plaintiffs by the taking of their land for the purposes of a reservoir. Before THAYER, P. J.

At the trial plaintiffs produced numerous witnesses who testified as to the value of the property if cut up into lots, with streets opened through it, and municipal improvements made upon it. No objection was made to these witnesses, and they were elaborately cross-examined by the attorney for the city. After the trial had continued two days, and one hundred and fifty pages of testimony had been taken, defendant's counsel moved that the court order that the testimony produced by the plaintiff as to what might have been the value of this property cut up into lots, opening streets, giving frontages, making it entirely different on a plan which did not exist there and does not exist, except in the scheme of the witnesses and the claimants, be stricken from the record.

The court overruled the motion. [1]

When James M. Stewart, a witness for plaintiff, was on the stand, he was asked this question:

" Q. Tell the jury what in the early part of 1892 it would have cost to have built that house."

Objected to.

" Q. What was the value of the house and buildings upon the lot?"

Objected to. Objection overruled. Exception for defendant. [2]

" A. I make the value of the buildings on that ground $23,000."

Defendant presented certain points which were withdrawn.

The court charged as follows:

" There is but one question for you to consider—the value
of the property.    You are not to pay the plaintiffs any more on
account of its having been taken by the city under its delegated
power of eminent domain than they could have gotten for it
if it had been sold in the public market.    Nor are the plaintiffs
to be paid one cent less than its full and fair value because the
city wanted it.    Your inquiries are thus reduced to a single
point, what was the fair market value of Mr. Warden's prop-
erty and Mrs. Bradbury's property at the time these properties
were taken by the city ; that is, on the 1st of May, 1892 ?    In
considering that, you are to consider what the properties would
have brought at that time, what they were worth in the public
market.    You are not to search about for a speculative value,
but for a real value, such a value as somebody would have been
willing at that time, if the lots had been sold, to give for these
properties.    In a word, what could have been gotten for them
in the public market on the 1st of May, 1892.    Of course, you
are not to sit down, and by laying out streets and making plans
of your own, and cutting up these tracts of land into innumer-
able small lots, to find a speculative value, which might repre-
sent a possible value to be obtained in future years after a
large expenditure of money upon improvements, etc.    You are
to look at the land as it was when taken, and in the light of
surrounding circumstances, and you are to ascertain with as
perfect impartiality as you can what was the fair selling value
of the land at that date.    That sum is what you ought to accord
to the plaintiffs in these cases.    You are to look at these tracts
of land as an entirety, as a whole—two large lots of land, one
of them containing thirteen acres and the other containing
between four and five acres, and you are to say what the lots
in that situation, and in view of all the surroundings of those
tracts, would have brought at that time.

" While I said just now that you cannot properly sit down
and figure out a valuation of these tracts of land founded upon
a calculation of the value after they are cut up into lots and
streets, according to an ideal plan, I say at the same time that
it is perfectly legitimate for you to look at the capacity of this
land for a sale as city lots in order to ascertain its then value.
Obviously you would put a different value upon land which is
in the market by the foot from that which you would put upon

land which is in the market by the acre. Was this land then selling by the acre, or was it then selling by the foot? Everything which gives intrinsic value to the land you may properly consider in making up your estimate of the market value. [If, for example, this land was in a neighborhood which was ripe for city improvements, so that the land at that time could and would have been sold at that time by the foot, you would put a different estimate on it from that which you would naturally put upon it if it was farm land. I say, therefore, you are not to ignore the capacity of the land for city improvements in fixing your value of it.] [3] [It is proper for you to consider whether this land was ripe for city improvements at that time or not. You ought to give the facts in regard to that such weight as they are entitled to. It was to enable you to form a correct judgment upon that subject that much of this testimony was admitted.] [4] That testimony was not admitted with a view of permitting you to sit down and cut up these tracts of land into lots and rendering a verdict for so much per lot, or to permit you by that means to arrive at a speculative verdict founded upon a state of things which might not exist for years to come, but it was admitted, in order that you might thoroughly understand the true value of the land in the market—such as it then was. It is perfectly right for you to consider the capacity of the land to be cut up into city properties. [If this land was then ripe for city improvements—if it could then have been sold and would have been sold as city lots—you have a right to consider that, and should give the plaintiffs the value of that land, whatever it then was. If, on the contrary, you find that this land was not then ripe for city improvements —that the lots were country lots and farm land, and that property was not selling there by the foot or in city lots, but only by the acre—of course you will put a different valuation upon it.] [5]

" [You are entitled to consider all the facts which have been put in evidence in ascertaining what was the real market value of the land at the time the city took it, and that, with interest from the 1st of May, 1892, is what you ought to award to these plaintiffs respectively] [6]—the fair market value of these two tracts of land on the 1st of May, 1892."

Verdict for William G. Warden for $149,240 and for Mary A. Bradbury for $55,333.60.

The rule for a new trial was discharged upon remittiturs being filed, whereby the verdicts were reduced as to William G. Warden to $133,250, and Mary A. Bradbury to $49,405. On these remittiturs being filed, judgments were entered in favor of the plaintiffs for the last mentioned sums. Defendant appealed.

*Errors assigned* were, (1, 2) rulings on evidence, quoting the bill of exceptions; (3–6) instructions as above, quoting them; (7) in not commenting on the extraordinary estimate of witnesses called by the plaintiffs, and permitting their speculative values to be submitted to the jury without any word of caution; (8) in entering judgment in favor of plaintiff.

*James Alcorn,* assistant city solicitor, *Charles F. Warwick* city solicitor with him, for appellants.—The motion to strike out should have been sustained: Penn. Schuylkill Valley R. R. v. Cleary, 125 Pa. 442; R. R. v. Stocker, 128 Pa. 233; Searle v. R. R., 33 Pa. 57; R. R. v. Balthaser, 119 Pa. 472; 1 Rice on Evidence, 516; Lewars v. Weaver, 121 Pa. 268; Wilson v. Equitable Gas Co., 152 Pa. 566; Huling v. Henderson, 161 Pa. 553; Del. & Hud. Canal Co. v. Barnes, 31 Pa. 193; Zell v. Com., 94 Pa. 258; R. R. v. Decker, 82 Pa. 119; Wilson v. Equitable Gas Co., 152 Pa. 566.

The court should have cautioned the jury against the testimony of Henry Warden particularly, and also of the rest of the witnesses: Herbert v. Rainey, 162 Pa. 525.

*John G. Johnson, George P. Rich* and *Mayer Sulzberger* with him, for appellees.—The evidence sought to be excluded by the motion to strike out could not have been excluded, even if the same had been objected to in time: Penn. S. V. V. v. Cleary, 125 Pa. 451; R. & P. R. v. Balthasar, 119 Pa. 482; Wilson v. Equitable Gas Co., 152 Pa. 566.

There was no error in the refusal to strike out: U. S. Tel. Co. v. Wenger, 55 Pa. 268; Yeager v. Weaver, 64 Pa. 427; Robinson v. Snyder, 25 Pa. 203; Ashton v. Sproule, 35 Pa. 492; Oswald v. Kennedy, 48 Pa. 9; Robinson v. Snyder, 25 Pa. 207.

In Lewars v. Weaver, 121 Pa. 268, Mr. Justice Green was

dealing with the action of the lower court, which he condemned, because testimony had been stricken out by it upon its own motion, which had been acceptable to both plaintiff and defendant.

In Huling v. Henderson, 161 Pa. 553, there was an objection to the testimony which was not followed up subsequently. The court commented upon the failure thus to act.

### WARDEN'S APPEAL.

PER CURIAM, April 29, 1895:

If this case were before us on a motion for a new trial, much of defendant's elaborate argument would perhaps be relevant and worthy of serious consideration; but, that motion appears to have been properly entertained by the court below, and, after due consideration, a new trial was refused on condition that plaintiff would remit $15,990 of the damages found by the jury. That condition having been complied with, judgment was entered on the verdict thus reduced.

On this appeal our inquiry is necessarily restricted to questions of law involved in the assignments of error. In four of the specifications,—3d to 6th inclusive,—the subjects of complaint are the excerpts, from the learned trial judge's charge, recited therein respectively. In the general charge, the jury were clearly and distinctly told, inter alia, that the sole question for their consideration was: "What was the fair market value of" plaintiff's property on May 1, 1892, when it was taken by the city? The instructions relating thereto were well calculated to impress upon the jury the propriety of closely adhering to that question in their consideration of the testimony; and, whether portions of the charge assigned as error be separately considered, in their detached form, or in connection with the context and as parts of the entire charge, we fail to discover any substantial error in either of them. With the exception of the instruction as to interest, which was remedied by remitting a sum fully equal thereto, the charge as a whole was adequate and substantially correct.

As to the omission of the court to comment on the alleged "extraordinary estimate of Henry Warden and other witnesses called by the plaintiff," etc., complained of in the seventh specification, it is sufficient to say that the learned judge was not

requested to comment, favorably or otherwise, on the testimony of any of the witnesses, and in the absence of such request he was not bound to do so. The record shows that points for charge were submitted by defendant, and then withdrawn, but what they were or why they were withdrawn does not appear.

There is no merit in the second specification. It is not alleged, nor does it appear, that the witness was incompetent. An examination of his testimony not only shows that he was a competent witness, but that his testimony, including the portion quoted in the specification, was relevant to the issue before the jury.

The only remaining specification that requires notice is the 1st, alleging error in overruling the following motion, viz: " That the court order that the testimony produced by the plaintiff as to what might have been the value of this property cut up into lots, opening streets, giving frontages, making it entirely different on a plan which did not exist there and does not exist, except in the scheme of the witnesses and the claimants, be stricken from the record." In view of the rather vague and indefinite character of this motion, the time when, and the circumstances under which it was made, etc., the learned court was clearly right in refusing to entertain it. It was not made until after the trial had progressed for two days, all of plaintiff's testimony in chief (150 printed pages) had been received, and he had rested. If the motion had been granted and the order made, it would have been very difficult, if not impossible for the parties in interest to know how much of the one hundred and fifty pages of plaintiff's testimony had been stricken out. During the time that was occupied by plaintiff in the introduction of his testimony, witness after witness was called and examined without objection and elaborately cross-examined in relation to matters—presumably referred to in the motion. Indeed, a very considerable part of the testimony was of that character, and all of it was offered and admitted without objection until the plaintiff closed his testimony in chief, and then the motion was sprung upon him. If defendant's counsel then for the first time began to realize that what he now calls irrelevant and incompetent testimony had been admitted, the very least that he should have done, in his appeal to the discretion of the court, would have been to specify particularly the por-

tions of the testimony at which his motion was aimed. In denying the motion, there is nothing that savors of an abuse of discretion on the part of the learned trial judge.

We find nothing in the record that would justify much less require us to sustain either of the specifications of error.

Judgment affirmed.

### BRADBURY'S APPEAL.

PER CURIAM, April 29, 1895:

In the court below this case was tried with No. 151 of this term, William G. Warden against same defendant, in which an opinion has just been filed. The questions involved are substantially the same in both. For reasons briefly stated in the opinion referred to we think the judgment in this case also should be affirmed.

Judgment affirmed.